ROBERT W. PATRICK

*v.*

CATHARINE PATRICK et al.

[Decided May 15th, 1906.]

1. A partnership, engaged in the business of contracting builders, purchased with firm funds vacant property, and erected thereon buildings for the purpose of sale. At the time of the death of one of the partners the partners held such real estate.—*Held*, that in the distribution of the assets of the firm the real estate should be treated as personalty, and the widow and heirs of the deceased partner were entitled to receive the same as personalty.

2. A surviving partner filed a bill against the widow and heirs of a deceased partner to settle the partnership affairs. The suit was conducted in a friendly manner, and the counsel for defendants took a personal interest in all the sales of the real estate belonging to the partners and assisted the court in each case in which it was called on to approve the sales.—*Held*, that defendants were entitled to their costs out of the estate.

3. Each party to the suit was entitled to a counsel fee, to be paid out of the partnership assets, in addition to the taxable costs.

On final hearing.

*Mr. Egbert J. Tamblyn,* for the complainant.

*Mr. Chauncey G. Parker* and *Mr. Alfred N. Dalrymple,* for the widow.

*Mr. Herbert L. Thowless,* for the infant children.

PITNEY, V. C.

This is an administration suit to wind up a partnership and pay the debts and distribute the net assets.

For present purposes it is sufficiently accurate to say that the net partnership estate now in hand for distribution is the result of the sale of real estate, and that the proceedings have been conducted throughout in an entirely friendly spirit and manner. There has been no contest whatever up to this time.

The sole question remaining is whether that part of the proceeds which now is to be allotted as the share of the deceased partner shall be treated in such allotment and distributed between the widow and her children as personalty or as realty.

The facts are these: Two brothers, Robert W. Patrick and John L. Patrick, were, during their joint lives, partners as contracting builders, and during the last years of their joint lives were engaged as partners in the business of buying, with partnership funds and credits, vacant lots and erecting thereon buildings, erected in like manner from partnership funds, to the construction of which they gave their personal attention, and then selling them in the market at a profit if possible.

John L. Patrick died in 1904 intestate, leaving his widow and three infant children him surviving.

At the time of his death the brothers were the owners by conveyance to them as tenants in common of several valuable pieces of real estate in Newark, nearly all of which were somewhat encumbered by mortgages given by the two brothers to secure their joint partnership indebtedness.

Shortly after the death of his brother, Robert W. Patrick, the survivor, filed the bill herein against his brother's widow and children and against her as administratrix of her husband's estate, to settle the partnership affairs. The widow and children appeared, the latter by guardian, and the cause was brought to a preliminary hearing, at which the existence of the partnership and its nature and objects, as above set forth, were proven wholly by parol.

A decree establishing the partnership and for the sale of the land was made on the 11th day of April, 1905.

The various pieces of real estate were brought into the market

and sold free and clear of the rights of all the defendants and all at a good price.

The debts were paid and the net sum of about $14,000 remains. The partnership accounts were settled by a master.

The question, as above stated, is as to the disposition of the share of the deceased brother in this sum. How shall it be distributed between his widow and her infant children?

In considering that question I shall not treat the children's interests as at all prejudiced by the interlocutory decree before mentioned.

First, what is the effect of the scope of the partnership having been wholly by parol?

The question as presented by this case differs, perhaps, from what it would be if this were an attempt by a party to establish a partnership in a going business which consisted entirely in dealing in real estate by a contract resting wholly in parol.

That question was dealt with in an elaborate opinion by Sir James Wigram in *Dale* v. *Hamilton, 5 Hare 369 (1851)*, and he came to the conclusion, after a thorough examination of the authorities, that a partnership in real estate transactions could be established *inter partes* by parol. But that decision has been questioned and not followed by later decisions, ·as appears by an examination of the text and notes of *Lind. Part. 81 Book 1 ch. 4.*

However, Lord Lindley lays down the law to be that if a partnership entered into by parol to deal in real estate be actually entered upon and the business conducted in accordance with such parol contract, the effect upon the land in the way of conversion from realty into personalty is precisely the same as if the contract be in writing. And this was held in *Essex* v. *Essex, 20 Beav. 449*, and land which had been used by partners for partnership purposes under a parol contract was held to be personalty.

However, the very question here involved was considered with great care by Vice-Chancellor Kindersley in *Darby* v. *Darby, 3 Drewry 495; 2 Jur. (N. S.) 271; 25 L. J. Ch. 371 (1856).* I have used the latter report. After going through all the previous authorities with great care he proceeds (at *p. 378*), as follows:

"Now the present case is not precisely that. It is not the case in which two persons agreeing to carry on ordinary commercial or manufacturing trade find it desirable or necessary, for the purpose of carrying that trade on, simply to purchase a site for that trade. This is not that case exactly. In this case they bought the land as stock in trade, by the sale of which, in retail I may call it, they were to make the profit of their partnership. There the land was not the plant, if I may use the expression, on which the trade was to be carried on, but was the only commodity that was the subject of their trade. Does that make any difference? If it makes any difference, it appears to me the difference is all in favor of its being personal property, because, beyond all doubt, this real estate is put into the same position as cotton would be that was purchased by persons in the cotton trade, or. as sugar would be when purchased by persons carrying on the sugar business in partnership together, or as any other trading commodity would be when purchased by persons carrying on a particular trade. It appears to me that, even if I entertained a greater doubt on the cases that have already been considered, of partners purchasing merely a site for their trade, if I entertained a greater doubt on those cases, that doubt would hardly exist to the same extent when I come to consider that here the real estate was bought merely for the purpose of selling it again. The very contract of partnership, the very nature of the partnership which these two gentlemen, Abraham and Alfred Darby, entered into was, 'We will buy this land in order to sell it again.' There is, although not in writing, because it was a verbal contract, an express contract that they shall sell this real estate again, and without selling this real estate again they would have had no profit, nor any business to carry on at all. Therefore, I confess it appears to me in this case there cannot be the slightest doubt that Abraham and Alfred Darby, having purchased this real estate for the purpose of parceling it out into small lots convenient for building purposes, and other purposes which purchasers might require property for, and having, in effect, actually contracted that they will sell it again, each partner has a right at the dissolution of the partnership, or at any time during the partnership, to say, I will have the contract car-

ried out; the property shall be sold as we contracted it should be sold. So that here we have what Lord Thurlow wanted in *Thornton* v. *Dixon,* namely, an actual contract that the property should be sold."

And see in this connection *Myers* v. *Perigal, 11 C. B. 90 (1851)*; *2 DeG. M. & G. 599, 619,* and *Forbes* v. *Steven, L. R. 10 Eq. Cas. 178* (at *p. 188 et seq.*) *(1870)*.

As *Darby* v. *Darby,* like this, was a parol contract between the parties, it is precisely in point.

Further, *Darby* v. *Darby* makes the distinction between the purchase of real estate for the uses merely of a partnership engaged in manufacture or trade other than dealing in real estate, and the present case where the real estate is itself the stock in trade.

There are authorities in this country, and probably the great majority hold that in the former case, as pointed out in *Craighead* v. *Pike, 58 N. J. Eq. (13 Dick.) 15* (at *p. 22*), the real estate, not being, strictly speaking, partnership stock in trade. will be treated as personalty only so far as is necessary to pay the partnership debts. See in this connection the language of Chancellor Vroom, in *Smith* v. *Wood, 1 N. J. Eq. (Sax.) 74* (at *p. 82*). And see *Campbell* v. *Campbell, 30 N. J. Eq. (3 Stew.) 415,* per *Chancellor Runyon,* and see all the cases collected up to that date in *Buchan* v. *Sumner, 2 Barb. Ch. Rep. 165* (at *p. 199 et seq.*).

But this rule does not apply where the only business of the partnership is the dealing in real estate, and the original contract contemplated and required its sale during and at the end of the partnership business.

This last was distinctly decided in *Maddock* v. *Astbury, 32 N. J. Eq. (5 Stew.) 181,* where there was a contract in writing that the surviving partner, in case of death, should be entitled to take the partnership property at a valuation.

That suit was, as here, an action by the surviving partner to enforce the contract as against the heirs-at-law and personal representatives, and Chancellor Runyon held that the contract should be enforced and the amount coming to the personal repre-

sentatives should be treated as personalty and go to the next of kin and not the heirs-at-law.

I shall therefore advise a decree that the widow is entitled absolutely to one-third of the net sum remaining as the share of her husband, instead of the usual one-third for her life, and the balance to be paid to the guardian of the infants.

With regard to the costs—the suit has been conducted in a friendly manner, and the counsel for the defendants have taken a personal interest in all of the sales of the real estate, and have attended and assisted the court in each case that it has been called upon to approve the several sales which have been submitted to it. Therefore, in justice to the defendants, they should have their costs out of the estate. And this seems to be the settled practice in cases of this nature in the English courts. The reason of the rule is that the suit is beneficial to both parties. See *Hamer* v. *Giles, 11 Ch. Div. 942 (1879)* ; *Potter* v. *Jackson, 13 Ch. Div. 845 (1880)*, and *Butcher* v. *Pooler, 24 Ch. Div. 273 (1884)*, per *Vice-Chancellor Bacon* (at *p. 274)*. There the plaintiff, though she failed in her main contention, was allowed her costs out of the estate.

In *Ross* v. *White, 3 L. R. Ch. 326 (1894)*, it was admitted that each party were entitled to have his costs out of the fund, but one party had drawn out more than his share of the partnership assets and the balance was such that if he took out his costs the other side would not get his proper share of the proceeds, and the court held that before the party who had overdrawn his account could have his costs he must replace the amount of his overdraft.

In the English courts the costs include counsel fees.

This brings us to the question of counsel fees in this case.

I think that each side is entitled to a counsel fee, to be paid out of the fund in addition to the taxable costs. These latter, of course, are not sufficient compensation, especially in the case of the defendants. Their counsel have rendered equal service with the complainant in bringing this partnership to so fortunate a conclusion.

The counsel for the widow, as such and as administratrix of her husband's estate, in rendering these services, could not, and in fact did not, distinguish at all between her and the infant

children. And on the final question as to the conversion of the real estate into personalty they submitted the authorities on both sides of the question to the court, with eminent fairness to the infant defendants, and did nothing to mislead the court.